UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN B. BRADLEY,

        Petitioner,

                             CASE NO. 10-cv-12816

v.                                HONORABLE STEPHEN J. MURPHY, III

JEFFREY WOODS,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITIONS FOR WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND
<u>GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

Petitioner Marvin B. Bradley filed a habeas corpus petition under 28 U.S.C. § 2254.

The habeas petition challenges Bradley's state convictions for second-degree murder,

Mich. Comp. Laws § 750.317, assault with intent to commit murder, Mich. Comp. Laws §

750.83, and possession of a firearm during the commission of a felony ("felony firearm"),

Mich. Comp. Laws § 750.227b.  Bradley raises claims regarding the sufficiency of the

evidence, the trial court's jury instruction on flight, and his trial and appellate attorneys.  He

also purports to have new evidence that the prosecution's main witness committed perjury,

and, on that basis, he claims to be actually innocent of the crimes for which he was

convicted. The Court has reviewed the record and will deny the petition.

**BACKGROUND**

I.    <u>The Trial, Verdict, And Sentence</u>

Bradley was charged in Wayne County, Michigan with first-degree (premeditated)

murder, assault with intent to commit murder, and felony firearm.  The charges arose from

an incident during which Martel Solomon and Nigel Hawkins, Jr., were shot.  Hawkins died

from a single gunshot to his head.  Solomon survived and testified against Bradley at trial

in Wayne County Circuit Court.   The state court summarized the evidence at trial as

follows:

> On the afternoon of June 12, 2005, Martel Solomon and the decedent
> were walking in the street and passed defendant's house on the corner of
> Mansfield and Elmira Streets in Detroit.  Solomon testified that defendant,
> whom he recognized from school and the neighborhood, was on the porch
> with others.  Solomon testified that someone yelled, "What the f* *k yall doing
> here."[1]  Solomon and the decedent continued walking, as Solomon urged the
> decedent not to respond.  Solomon testified that defendant ultimately moved
> off the porch into the street and "started shooting" a pistol.  Solomon and the
> decedent ran and attempted to jump a fence to escape, and defendant "shot
> at [the decedent] while he was jumping the fence."  The decedent fell over
> the fence into a neighbor's backyard.[2]  Solomon was shot in the arm, and
> continued running.  The decedent died from a gunshot wound to the head.
>
> Solomon identified defendant as the shooter to the police. According
> to police testimony, when they arrived at the crime scene, they spoke with
> John Kealing, a/k/a Leonard Jackson, Cordero Jones, Lamar Jones, and
> Veno Tuff, who had been outside with defendant.  The police tested each of
> the men for gunshot residue.  Defendant was not there and could not be
> located.  Defendant was subsequently arrested on August 17, 2005, in
> Atlanta, Georgia.
>
> At trial, defendant, Cordero, and Tuff all testified that they were
> standing together when the decedent and Solomon drove by, taunting them
> by "burning rubber" and playing loud music.  When Solomon and the
> decedent were told to leave, the decedent brandished a gun.  Defendant,
> Cordero, and Tuff fled.  Minutes later, defendant, Cordero, and Tuff heard
> gunshots.  Cordero and Tuff testified that they saw a man dressed in black
> armed with a weapon fleeing the area.  Neither Cordero nor Tuff saw
> defendant in possession of a weapon.

[1] Solomon indicated that the decedent and defendant "never got along" while they were in middle school.  Before the shooting, Solomon had no problems with defendant.

[2] The decedent's body was found in the neighbor's backyard.  The neighbor told the police that he heard arguing, followed by eight or nine gunshots.

2

Defendant denied possessing or shooting a firearm on the day of the incident. Defendant denied knowing the decedent or having any disagreement with him, although he admitted that he knew Solomon from his neighborhood. Defendant denied knowing that anyone had been shot, that the police were searching for him, or that there was a warrant for his arrest. Rather, defendant claimed that he did not return to speak with the police on the day of the shooting because he was on probation, and that he did not leave Michigan until two or three weeks after the incident. Defendant claimed that he left Michigan because he "just wanted to go have some fun." Defendant admitted that he gave the Atlanta police an alias and an incorrect date of birth when he was arrested, but claimed that he did so only because he had violated his probation by leaving Michigan.

In rebuttal, a Detroit fugitive apprehension team officer testified that on June 12 and 13, 2005, the police looked for defendant at the homes of his mother and sister, and also spoke to defendant's brother. At that time, defendant's family members were advised that the police needed to locate defendant in connection with a murder. The officer had contact with defendant's family at least three times.

*People v. Bradley*, No. 269568, 2007 WL 1490468, at *1–2 (Mich. Ct. App. May 22, 2007) (footnotes in original as notes 2 and 3).

The jury found Bradley guilty of second-degree murder (as a lesser-included offense of first-degree murder), assault with intent to commit murder, and felony firearm. The trial court then sentenced Bradley to two years in prison for the felony firearm conviction, followed by concurrent terms of twenty to thirty years in prison for the murder and assault convictions.

## STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Under Section 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the

3

merits:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

I.    Sufficiency Of The Evidence

Bradley alleges that the prosecution failed to present legally sufficient evidence that he committed the offenses.  The only eyewitness to identify Bradley as the shooter was

4

Martel Solomon, and Bradley claims that Solomon was not a credible witness.  Bradley points out that Solomon was not tested for gunshot residue and he lied about his identity after the shooting.  Bradley contends that Solomon could not have seen the shooter because he was running away at the time and that Solomon's testimony about his identification of Bradley as the shooter and Bradley's alleged hostility toward Nigel Hawkins was contradicted by defense witnesses at trial.  The Michigan Court of Appeals reviewed Bradley's claim on direct appeal and concluded that the evidence was sufficient to sustain Bradley's convictions.

> A.    Clearly Established Federal Law

"A defendant challenging the sufficiency of the evidence bears a very heavy burden." *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (quotations marks and citation omitted). The critical inquiry on review of challenges to the sufficiency of the evidence is:

> Whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).

This standard ordinarily "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Bradley, however, is not contesting the elements of second-degree murder, assault with intent to commit murder, or felony firearm.  Instead, he claims there was insufficient evidence that he perpetrated the crimes. Stated differently, he claims that there was insufficient evidence

5

linking him to the crime and showing that he killed Hawkins, assaulted Solomon, and used a firearm during those offenses.

"The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App. 646 (1970)).  This is a demanding standard, but "[i]f the evidence at trial was sufficient to permit jurors to find beyond a reasonable doubt that the man seated at the defense table was the same person referred to in the account of the offense, then there is no reason to overturn the jury's conviction based on the government's alleged failure to prove identity." *United States v. Thomas*, 763 F.3d 689, 694 (7th Cir. 2014).

B.     Application

Martel Solomon was the only witness at trial to testify that Bradley shot him and Nigel Hawkins.  Nevertheless, even one witness testifying against the defendant is legally sufficient evidence to convict the defendant.  *Jones v. Butler*, 778 F.3d 575, 582 (7th Cir. 2015) (citing *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005)); *accord Foxworth v. St. Amand*, 570 F.3d 414, 426 (1st Cir. 2009) (stating that "a criminal conviction can rest on the testimony of a single eyewitness"); *United States v. Smith*, 563 F.2d 1361, 1363 (9th Cir. 1977) (stating that "the testimony of one witness, if solidly believed, is sufficient to prove the identity of a perpetrator of crime"); *United States v. Sanders*, 547 F.2d 1037, 1040 (8th Cir. 1976) (stating that "the uncorroborated testimony of a single eyewitness, if believed, may be sufficient to sustain an identification upon which a conviction depends").  And even though Bradley claims that Solomon was not credible, the Michigan Court of Appeals correctly noted on review of Bradley's claim that,

6

Solomon was unwavering in his identification of defendant as the shooter. Solomon testified that, at that time of the shooting, no one was near defendant and defendant was the only person with a gun. Solomon indicated that he could easily recognize defendant, explaining that he has "known of" defendant for several years from school and the neighborhood. Immediately after the incident, Solomon told the police that defendant was the shooter while he was being treated at the hospital. Solomon provided a detailed description of defendant that included defendant's nickname, age, height, weight, complexion, hairstyle, and the fact that defendant had teardrop tattoos underneath one of his eyes. The next day, Solomon identified defendant from a photograph. Solomon also identified defendant as the shooter at the preliminary examination and trial. Solomon testified that he was "absolutely positive" that defendant shot him and the decedent. In addition, by defendant's own admission, he was in the area at the time of the shooting.

*Bradley*, 2007 WL 1490468, at *3.

While it is true that Solomon lied about his identity when he was treated for his injuries after the shooting, he explained at trial that he used his brother's name at the hospital because his brother had medical insurance and he (Solomon) did not. Trial Tr. Vol. II, 78-79, March 14, 2006. And even though Bradley and two of his friends maintained at trial that Bradley did not shoot the victims or that they did not know who fired the gun, a "reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

A rational juror could have concluded that Bradley perpetrated the crimes against Solomon and Hawkins. Consequently, the evidence at trial was sufficient to support the jury's verdict. Even if the Court had concluded that a rational trier of fact could *not* have

7

found Bradley guilty beyond a reasonable doubt, the Court must defer to the state court's sufficiency determination because its determination was reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Bradley therefore has no right to relief on the basis of his challenge to the sufficiency of the evidence.

II.   Trial Counsel

Bradley alleges in his initial petition and in his amended petition that his trial attorney provided ineffective assistance.  The state courts considered and rejected Bradley's claims on the merits.

A.   Clearly Established Federal Law

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), is clearly established federal law for purposes of ineffective assistance of counsel claims.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). Under *Strickland,* a defendant must show that his trial attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

8

to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

    B.    Failure To Attempt To Suppress Evidence Of Flight

Bradley alleges that his trial attorney was ineffective for failing to move to suppress evidence regarding police officers' efforts to locate him after the shooting.  The disputed evidence consisted of testimony that:   the police searched for Bradley at several addresses; a federal warrant for Bradley's arrest was obtained on the basis of unlawful flight to avoid apprehension or prosecution; Bradley was featured in televised newscasts as being wanted by the police; his fingerprints were placed in the FBI central registry; and he was arrested in Atlanta under a fictitious name and date of birth following the execution of a narcotics raid. Trial Tr. Vol. III, 33–53, March 15, 2006; Trial Tr. Vol. IV, 133-44, March 16, 2006.

Bradley testified at trial that he left Michigan to have fun, that he did not know he was wanted for murder before he left the state, that he learned of the shooting after his arrest in Atlanta, and that he used an alias there because he was on probation in Michigan and was not supposed to leave the state. Bradley claims in his habeas petition that evidence of flight was irrelevant because the prosecution failed to show that he knew he was wanted by the police and that he was actually fleeing from the police.  He also claims that the evidence unfairly prejudiced him because it suggested that he had committed other crimes.

The Michigan Court of Appeals noted on review of Bradley's claim that evidence of

9

flight is admissible in evidence in Michigan, *see People v. Coleman*, 210 Mich. App. 1, 4 (1995), and that Bradley's actions could be considered evidence of flight. In reaching this conclusion, the Court of Appeals noted that Bradley left the scene of the crime, subsequently went to Atlanta, and attempted to escape detection upon arrest in Atlanta by providing an alias and incorrect date of birth.

The disputed evidence was relevant and admissible, and the jury could have inferred from the evidence that Bradley fled from the State out of a guilty conscience. Defense counsel, therefore, was not ineffective for failing to object to the officers' testimony concerning their efforts to locate Bradley. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

C.     Failure To Object To The Prosecutor's Comment About Bradley's Tattoos And Past Experience With Guns

Bradley argues that his trial attorney was ineffective for failing to object to the prosecutor's questions and comment about his tattoos and past experience with guns. "To succeed on this claim, [Bradley] needs to establish that prosecutorial misconduct has taken place, that his trial counsel's failure to object to it was deficient, and that this failure prejudiced the defense." *Kincade v. Wolfenbarger*, 324 F. App'x 482, 493 (6th Cir. 2009).

1.     The Tattoos

Bradley asserts that his trial attorney was ineffective for failing to object to the prosecutor's questions and comments about three teardrop tattoos beneath Bradley's left eye. The tattoos were one of the factors that enabled Martel Solomon to identify Bradley as the man who shot him and Hawkins. Trial Tr. Vol. II, 80-82, 97, March 14, 2006. At trial,

however, the prosecutor cross-examined Bradley about the meaning of his tattoos. Bradley explained that the tattoos represented "people who died close to [him]." Trial Tr. Vol. IV, 91, March 16, 2006. The prosecutor then asked Bradley whether the teardrops actually reflected people whom Bradley had shot. Bradley answered, "No." *Id.*

Later, during closing arguments, the prosecutor stated that there were many different reasons to have a tattoo and even though Bradley offered one explanation, the criminal justice system had taught her a different explanation. *Id.* at 195. According to Bradley, the prosecutor's questions and comments about his tattoos inferred that he had engaged in previous gun-related violence, that the tattoos represented people he had shot, and that the prosecutor knew something which was not in evidence.

2.      Guns

Bradley claims that trial counsel also was ineffective for failing to object to the prosecutor's comments and questions about Bradley's past acts, which included firing a shotgun, possessing a handgun, and having BB gun fights with his friends as a young boy. *Id.* at 104-05. After Bradley admitted to having engaged in BB gun fights with his friends, the prosecutor asked, "[S]o you would shoot a human target, right?" Bradley answered, "Yes." *Id.* at 105. Continuing, the prosecutor asked, "[S]o what you did back on June twelve shooting a human target is no difference (sic) than what you've done in your past?" Bradley responded by saying that he did not shoot anyone on June twelve. *Id.* The prosecutor also asked Bradley whether his nickname ("Pops") was associated with gunfire. *Id.* at 104.

Bradley contends that the prosecutor's comments and questions were improper under Michigan Rule of Evidence 404(b)(1), because the prosecutor used the "other acts"

11

evidence to show that he acted in conformity with his past acts on June 12, 2005. Bradley further alleges that the prosecutor failed to give defense counsel notice of intent to introduce the evidence, as required by Michigan Rule of Evidence 404(b)(2). As a result, he claims that trial counsel was ineffective for failing to object to the prosecutor's comments and questions.  He maintains that, had trial counsel objected to the prosecutor's comments and questions, there is a reasonable probability that the trial court would have excluded the testimony and argument and that he would have been acquitted.

      3.     The State Evidentiary Hearing And The State Court's Decision

At the state evidentiary hearing, Bradley's defense attorney testified that she did not object to the prosecutor's questions about Bradley's past experience with guns because she did not consider the prior acts to be similar acts or "bad" acts.  Mot. Hr'g Tr., 10–12, 42, June 5, 2009. As for Bradley's BB gun fights, defense counsel stated that she regarding the incident as "just kids playing." *Id.* at 32. She did not think the gun fights were illegal, relevant, or harmful to the defense, and she noted that objecting to a question sometimes merely calls attention to an issue. *Id.*

As for the prosecutor's comments and argument about Bradley's tattoos, defense counsel noted that the tattoos were one basis for Martel Solomon's identification of Bradley as the shooter. She thought that Bradley had given a solid explanation for the meaning of the tattoos in response to the prosecutor's questions and that it was for the jury to decide whose explanation was more credible. *Id.* at 15-16.

The trial court determined that the prosecutor's disputed questions and comments about Bradley's tattoos and prior use of guns constituted improper conduct. The court stated that there was no evidentiary basis for the inflammatory questions and comments

and that the prosecutor had failed to give prior notice of intent to introduce prior "bad acts" in evidence.  The trial court went on to say that defense counsel should have objected to the prosecutor's conduct and, if she had, the court would have ruled in her favor and admonished the jury to disregard the misconduct. The court opined that defense counsel had misunderstood Michigan Rule of Evidence 404(b) on "other acts" evidence and that there was no legitimate trial strategy in failing to object to the prosecutor's serious misconduct.

The trial court nevertheless ruled that, although the prosecutor's misconduct was disturbing and defense counsel "missed the boat" by not objecting to the misconduct, Bradley was not entitled to a new trial. The court opined that Bradley's guilt was proven beyond a reasonable doubt without the tainted evidence, misconduct, and failure to object and, therefore, Bradley did not suffer as a result. Mot. Hr'g Tr., 6-14, 21-22, Aug. 27, 2009.

4.    Analysis

This Court agrees that the prosecutor's comment—that, based on her experience, Bradley's tattoos meant something different from Bradley's explanation—was improper. The comment was improper because it implied that the prosecutor knew something the jury did not know. *Cf. United States v. Trujillo*, 376 F.3d 593, 607–08 (6th Cir. 2004) (acknowledging that prosecutors engage in improper vouching when they imply that they have special knowledge of facts not in front of the jury). The prosecutor's question and comment suggesting that Bradley's tattoos represented people whom Bradley had killed also was improper, because there was no evidence of that at trial. *See Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (stating that prosecutors may not assert facts which were never admitted in evidence).

13

Additionally, the state trial court determined that the prosecutor violated Michigan Rule of Evidence 404(b) on "other acts" evidence when she questioned Bradley about his past experiences with guns. And because a defense attorney's failure to object to prosecutorial misconduct can qualify as deficient performance under the first prong of the *Strickland* test, *see Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005), the Court assumes, for purposes of this opinion, that Bradley's attorney's failure to object to the prosecutor's misconduct amounted to deficient performance.

The remaining question is whether defense counsel's failure to object prejudiced the defense. To establish prejudice, Bradley must demonstrate a substantial likelihood that the result of the proceeding would have been different absent defense counsel's unprofessional errors. *Harrington*, 562 U.S. at 111–12.

The evidence against Bradley was substantial. Martel Solomon identified Bradley as the shooter shortly after the shooting, in a photo array, at the preliminary examination, and at trial. He was acquainted with Bradley, and he denied having any animosity toward Bradley before the shooting. Solomon's testimony, moreover, was not the only evidence against Bradley. A police officer testified that, by the time he left the crime scene, "Pops" (Bradley's nickname) had been identified as the shooter. Trial Tr. Vol. III, 18–19, March 15, 2006.

There also was evidence suggesting that Bradley fled the jurisdiction to evade the police. Although he testified that neither his mother, nor his sister, informed him that the police were looking for him, he admitted that, after he was arrested in Atlanta, his mother was able to contact him and tell him about the shooting. Trial Tr. Vol. IV, 94, 76-77, March 16, 2006. And even though he provided a different version of the facts for the incident on

14

June 12, 2005, by implying that the victims were shot by someone else while driving down the street, he could not explain how Hawkins' body ended up in a neighbor's backyard if he had been in a vehicle during the shooting. Nor could he explain why the victims' vehicles were not visible in the neighborhood after the shooting. His testimony also was not entirely consistent with that of his friends who implied that an unknown man in black clothing was the shooter.

The Court also notes that Bradley handled the prosecutor's questions about guns and tattoos quite well, and defense counsel reminded the jury that the case was not about having tattoos. Trial Tr. Vol. IV, 217, March 16, 2006. In addition, the trial court instructed the jurors that the attorneys' statements, arguments, and questions were not evidence and that the jurors should not convict Bradley merely because they thought he was guilty of some other bad conduct. Trial Tr. Vol. II, 4-5, March 14, 2006; Vol. IV, 164-65, 171, March 16, 2006.

In light of the trial court's jury instructions and the strength of the evidence against Bradley, there is not a substantial possibility that the result of the trial would have been different had defense counsel objected to the prosecutor's questions and comment about Bradley's tattoos and experience with guns. Bradley therefore has failed to show that counsel's allegedly deficient performance prejudiced the defense. And because AEDPA review must be "doubly deferential" to afford the state court and defense counsel the benefit of the doubt, *Donald*, 135 S. Ct. at 1376*,* the Court declines to grant relief on Bradley's claim that trial counsel was ineffective for failing to object to the prosecutor's questions and comments about his tattoos and past experience with guns.

III.    The Jury Instructions

15

Bradley claims that the trial court erred by instructing the jury on flight. According to Bradley, the instruction was damaging to his defense because there was no evidence that he knew of the charges against him or that he fled the scene due to a sense of guilt.  He further alleges that the error was not harmless.

A.      Legal Framework

"[N]ot every . . . deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The only question on habeas review of a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The Supreme Court "has consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963). "Where evidence of flight has genuine probative value, however, it is 'generally admissible as evidence of guilt, and . . . juries are given the power to determine 'how much weight should be given to such evidence.'" *United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989) (quoting *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir. 1984)).

B.      Application

The instruction on flight at Bradley's trial read:

> There has been some evidence in this case that the defendant tried to run away and hide using an alias name after the alleged crime.  This evidence does not necessarily prove guilt.  A person may run or hide for innocent reasons such as panic, mistake or fear.  However, a person may also run and hide because of a consciousness of guilt.
>
> You must decide in this case whether that evidence is true, and if true,

16

whether it shows that the defendant had a guilty state of mind.

Trial Tr. Vol. IV, 169-70, March 16, 2006.

This instruction correctly informed the jury that flight is not dispositive of guilt and that the jury had the option of deciding whether Bradley fled from the authorities and, if so, whether he had a guilty conscience. Because the jury instruction directed the jurors to make their own determinations as to whether Bradley fled, and, if so, what state of mind such flight evinced, the trial court's instruction on flight was not so prejudicial as to render the entire trial fundamentally unfair. *Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004). Bradley therefore has no right to habeas relief on the basis of his challenge to the jury instruction on flight.

IV.    <u>Appellate Counsel</u>

Bradley asserts that his appellate attorney was ineffective for failing to assert on direct appeal a claim about trial counsel's failure to object to the prosecutor's comments and questions about Bradley's tattoos and past acts. The state trial court agreed on collateral review that appellate counsel should have raised the issue on direct appeal.

Under federal law, an appellate attorney's failure "to raise an issue on appeal can amount to constitutionally ineffective assistance." *Jalowiec v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011). But an appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides not to raise the claim as a matter of professional judgment. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "In fact, the process of winnowing out weaker arguments on appeal is the hallmark of effective appellate advocacy." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation marks and citations omitted). To demonstrate that appellate counsel was ineffective, a habeas

17

petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that he would have prevailed on appeal if his appellate attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687–91, 694).

For the reasons given above in the discussion on trial counsel, Bradley's trial attorney was not constitutionally ineffective. Consequently, appellate counsel did not act unreasonably in failing to raise a claim about trial counsel, and there is not a substantial probability that Bradley would have prevailed on appeal if his attorney had raised the issue of trial counsel's alleged ineffectiveness. The Court concludes that Bradley's appellate attorney was not constitutionally ineffective. *See Shaneburger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (stating that "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit' ") (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

V.   <u>Perjury</u>

Bradley alleges that he was convicted on the perjured testimony of Martel Solomon, who was the only eyewitness to testify that Bradley shot both him and Hawkins. The basis for Bradley's perjury claim is Solomon's 2011 affidavit, which states that Solomon gave false testimony at Bradley's preliminary examination and trial when he said that Bradley was the shooter. Solomon also states in his affidavit that he never actually saw who fired the fatal shot, because he was running away at the time. According to Solomon's affidavit, the police informed him that Bradley was the shooter and also instructed him to testify accordingly or he would lose custody of his daughter. Bradley claims that he is entitled to a new trial because Solomon's affidavit provides important evidence which was not

available at trial.

The trial court reviewed and rejected Bradley's claim of perjury and actual innocence in its order denying Bradley's second motion for relief from judgment. The trial court stated that Solomon's affidavit was neither credible nor persuasive. First, the trial court noted that Solomon gave a detailed description of Bradley after the shooting and was unwavering in his identification of Bradley as the shooter. Second, the trial court stated that the affidavit provided no plausible reason for Solomon to have committed perjury at Bradley's trial. Finally, the court found it unlikely that Solomon would lie about the identification of the person who shot him.

A.    Clearly Established Federal Law

Prosecutors may not deceive a court or jurors by presenting evidence that they know is false. *Giglio v. United States*, 405 U.S. 150, 153 (1972). Nor may they allow false testimony to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

B.    Application

Bradley's claim of perjury rests on Martel Solomon's recanting affidavit. Recanting affidavits, however, "are always viewed with 'extreme suspicion.'" *Williams v. Coyle,* 260 F.3d 684, 708 (6th Cir. 2001) (quoting *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991)). Furthermore, Solomon's purported affidavit offers no explanation for why

19

he waited over five years to correct his allegedly false trial testimony. Even if the Court were to accept the affidavit as proof that Solomon falsely accused Bradley of shooting him and Hawkins, there is no evidence that the prosecutor knew Solomon's testimony was false. In fact, at trial the prosecutor provided nine reasons for concluding that Solomon's testimony was trustworthy. Trial Tr. Vol. IV, 193–99, March 16, 2006.

Bradley has failed to prove that the prosecution relied on perjured testimony. The Court therefore declines to grant relief on Bradley's perjury claim.

## VI.   Actual Innocence

In a related claim, Bradley asserts that he is actually innocent of the charges for which he stands convicted because Solomon's affidavit states that he lied at Bradley's trial when he testified that Bradley was the shooter. The Court finds no merit in this claim because a freestanding claim of actual innocence is not itself a constitutional claim for which habeas corpus relief may be granted. *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993). Thus, Bradley's "freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review." *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014).

"[I]n a capital case, a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant habeas relief if there were no state avenue open to process such a claim." *Herrera,* 506 U.S. at 417. But this is not a capital case, and "whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *House v. Bell*, 547 U.S. 518, 555 (2006). Consequently, Bradley has no right to habeas relief on the basis of his claim of actual innocence.

**CONCLUSION**

The state-court opinions and orders rejecting Bradley's claims were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts. The state-court decisions also were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Accordingly, the petitions for writ of habeas corpus are denied.

**CERTIFICATE OF APPEALABILITY**

Before Bradley may appeal the Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court declines to grant a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of those claims, nor conclude that the issues are adequate to deserve encouragement to proceed further. Bradley nevertheless may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**ORDER**

21

**WHEREFORE, IT IS ORDERED** that the Petitions for Writ of Habeas Corpus (document nos. 1 and 20) are **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Bradley may proceed in forma pauperis on appeal if he chooses to appeal this Court's decision.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 30, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2015, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager